# 26-189

# United States Court of Appeals
## FOR THE SECOND CIRCUIT

_____

INGRID PAOLA SAUCEDA HENRIQUEZ, A.C.S., MINORS, BY AND
THROUGH THEIR MOTHER, INGRID PAOLA SAUCEDA HENRIQUEZ,
P.S.H., BY AND THROUGH THEIR MOTHER, INGRID PAOLA SAUCEDA HENRIQUEZ,

*Petitioners-Appellants,*

v.

MARKWAYNE MULLIN, SECRETARY OF THE U.S. DEPARTMENT OF
HOMELAND SECURITY, JOSEPH B. EDLOW, DIRECTOR OF U.S. CITIZENSHIP
AND IMMIGRATION SERVICES, MARCOS CHARLES, ACTING EXECUTIVE
ASSOCIATE DIRECTOR, ICE ENFORCEMENT AND REMOVAL OPERATIONS,
JEFFREY OESTERICHER, TODD BLANCHE, ACTING UNITED STATES
ATTORNEY GENERAL,

*Respondents-Appellees.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF FOR THE RESPONDENTS-APPELLEES

JOSEPH NOCELLA JR.
*United States Attorney*
*Eastern District of New York*
271-A Cadman Plaza East
Brooklyn, New York  11201
(718) 254-6298

VARUNI NELSON
LAYALIZA SOLOVEICHIK
*Assistant United States Attorneys,*
*Of Counsel.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

PRELIMINARY STATEMENT ................................................................... 1

ISSUES PRESENTED FOR REVIEW ........................................................ 5

STATEMENT OF THE CASE ..................................................................... 6

    A.    Relevant Factual Background ................................................ 6

        1.    Henriquez and A.C.S. Enter Unlawfully and in December 2023 are Ordered Removed to Honduras ................. 6

        2.    Upon Being Ordered Removed, Henriquez and A.C.S. Twice Decline ICE's Invitations to Voluntarily Depart, and Instead File a Panoply of Applications with USCIS .............................................. 8

        3.    ICE Effectuates the Final Order of Removal on December 20, 2025 ................................................. 10

    B.    Proceedings in the District Court ........................................ 11

        1.    But for the December 21 Order Staying Removal Pending Outcome of this Habeas Suit, Henriquez and A.C.S. Would Have Departed to Honduras on December 22, 2025 ................................................ 11

        2.    Upon Transfer to the Eastern District of New York, the Government Responds to the Habeas Suit ........................ 14

    C.    Developments Since the District Court Denied the Habeas Petition ................................................................ 16

        1.    The BIA Denies Henriquez's and A.C.S.'s Motion to Reopen and Voluntary Departure is Again Offered ................. 16

        2.    Instead, Henriquez and A.C.S. File a PFR, Lose a Stay Motion, and Withdraw Their PFR ................................... 16

        3.    This Court, Earlier in this Appeal, Declines to Stay Removal ................................................... 17

4.  Henriquez and A.C.S. File Another Suit, Seeking Emergency Relief, Unsuccessfully ...........................................17

5.  Henriquez and A.C.S. Remain in the United States .................18

D.  The District Court Decision ...............................................................18

SUMMARY OF THE ARGUMENT ......................................................................19

ARGUMENT .........................................................................................................21

THE DISTRICT COURT PROPERLY DENIED THE HABEAS PETITION ..........................................................................................................21

A.  Standard of Review, and Standards Governing Denial of a Writ of Habeas ...............................................................................21

B.  The District Court Correctly Found that the Jurisdictional Bars in § 1252 Preclude Subject Matter Jurisdiction over the Habeas Petition, Which Challenges Removal-Focused Detention and Sought a Stay of Removal ..................................................................................21

1.  Congress Barred Judicial Review of Final Removal Orders, Including Applications for Stays of Removal, in 8 U.S.C. §§ 1252(a)(5) and (b)(9), as a Collateral Attack on a Removal Order. ....................................................21

2.  Applications for Stays of Removal Are Barred Under Section 1252(g) as Challenges to the Execution of a Removal Order.................................................................................31

3.  The Jurisdictional Bars in Section 1252 Preclude Subject Matter Jurisdiction over Claims Seeking Release from Detention Narrowly Effected to Achieve Removal...................................................................................36

C.  Even If Review Were Not Jurisdictionally Barred, The Petition Was Properly Denied Because Detention Was Proper Under 8 U.S.C. § 1231 ...................................................37

CONCLUSION .....................................................................................................46

## TABLE OF AUTHORITIES

### Cases

*Achbani v. Homan*, No. 17-cv-1512,
    2017 WL 4227649 (D. Conn. Sept. 22, 2017) ......................................36

*Akhuemokhan v. Holder*, No. 112-cv-1181,
    2013 WL 6913170 (E.D.N.Y. Dec. 30, 2013) ....................................26

*Ashqar v. Hott*, No. 19-cv-716,
    2019 WL 2712276 (E.D. Va. June 5, 2019) .......................................30

*Asylum Seeker Advoc. Project v. Barr*,
    409 F.Supp.3d 221 (S.D.N.Y. 2019).................................. 22, 27, 29, 30

*Beckford v. Lynch*, 168 F.Supp.3d 533 (W.D.N.Y. 2016)......................................42

*Bessemer Tr. Co. v. Branin*, 618 F.3d 76 (2d Cir. 2010)..........................................21

*Black v. Decker*, 103 F.4th 133 (2d Cir. 2024).........................................21

*Bumu v. Barr*, No. 20-cv-6742,
    2020 WL 6465433 (W.D.N.Y. Nov. 3, 2020) ....................................36

*Caceres v. Mullin*, No. 26-cv-3759,
    2026 WL 2111017 (E.D.N.Y. Jul. 22, 2026)......................................... 25, 27, 28

*Calderon v. Sessions*, 330 F.Supp.3d 944 (S.D.N.Y.2018).............................. 30, 35

*Callender v. Shanahan*,
    281 F. Supp.3d 428 (S.D.N.Y. 2017)...................................... 40, 42, 45

*Camarena v. Dir., Immigr. & Customs Enf't*,
    988 F.3d 1268 (11th Cir. 2021) .........................................................32

*Ceesay v. Bondi*, No. 25-cv-3716,
    2025 WL 1435615 (S.D.N.Y. May 16, 2025) ....................................36

*Chun Yat Ma v. Asher*, No. C11-1797,
    2012 WL 1432229 (W.D. Wash. Apr. 25, 2012)................................41

*Chupina v. Holder*, 570 F.3d 99 (2d Cir. 2009) ......................................38

*Clark v. Martinez*, 543 U.S. 371 (2005) ......................................................42

*Delgado v. Quarantillo*,
  643 F.3d 52 (2d Cir. 2011)..................... 23, 24, 25, 26, 27, 28, 29, 30

*De Oliveira Jimenez v. Searls*, No. 22-cv-960,
  2023 WL 11156340 (W.D.N.Y. Feb. 28, 2023) ...................................32

*Diallo v. Joyce*, 817 F.Supp.3d 202 (S.D.N.Y. 2025) ...............................41

*Diallo v. Lyons*, -- F.Supp.3d --,
  2026 WL 1791494 (E.D.N.Y. Jun. 22, 2026)................................. 29, 30

*Diesel Props S.r.L. v. Greystone Bus. Credit II LLC*,
  631 F.3d 42 (2d Cir. 2011)..................................................................21

*E.F.L. v. Prim*, 986 F.3d 959 (7th Cir. 2021) ................................. 32, 33

*Flores v. Lynch*, 212 F. Supp. 3d 907 (C.D. Cal. 2015), *aff'd in part,
  rev'd in part and remanded*, 828 F.3d 898 (9th Cir. 2016)...................15

*Garcia v. Dep't of Homeland Sec.*, 422 F. App'x 7 (2d Cir. 2011) .........45

*Gondal v. U.S. Dep't of Homeland Sec.*,
  343 F. Supp. 3d 83 (E.D.N.Y. 2018) ..................................................37

*Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995)..........................................34

*Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2010)..............35

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  586 U.S. 63 (2019) ..................................................................... 34, 35

*Huang v. Bondi*, No. 26-cv-406,
  2026 WL 318195 (E.D.N.Y. Feb. 5, 2026)..................................... 28, 29

*Izaguirre v. Blanche*, No. 26-cv-2911,
  2026 WL 2023200 (E.D.N.Y. Jul. 13, 2026).........................................29

*J.E.F.M. v. Lynch*, 837 F.3d 1026 (9th Cir. 2016)............................. 22, 23

*Jiang v. Bondi*, No. CIV 25-0922,
  2025 WL 3281819 (D.N.M. Nov. 25, 2025) ........................................41

iv

*Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022)......................................... 38, 39

*Joseph v. U.S. Att'y Gen., Dep't of Homeland Sec.*, No. 17-cv-5008,
 2017 WL 6001776 (E.D.N.Y. Dec. 4, 2017) ....................................................26

*K.K. v. Garland*, No. 23-cv-6281, 2025 WL 274431 (W.D.N.Y. Jan. 23, 2025),
 *appeal dismissed*, No. 25-190 (2d Cir Apr. 8, 2025)..................................... 31, 32

*Kakar v. United States Citizenship & Immigr. Servs.*,
 29 F.4th 129 (2d Cir. 2022)...............................................................46

*Lin v. Borgen*, No. 25-cv-5618,
 2025 WL 2158874 (S.D.N.Y. July 30, 2025) .......................................... 25, 30, 36

*Lopez Galvez v. Noem*, 25-cv-3229,
 2025 WL 1823549 (E.D.N.Y. Jul. 1, 2025) ..............................................25

*Mahdawi v. Trump,* -- F.4th --, 2026 WL 2090981 (2d Cir. Jul. 21, 2026) ...........24

*Metreveli v. Flanagan*, No. 25-cv-8039,
 2025 WL 3496754 (S.D.N.Y. Dec. 5, 2025) ............................................ 25, 31

*Nieto-Ayala v. Holder*, No. 8-cv-8347,
 2011 WL 3918156 (S.D.N.Y. Aug. 30, 2011)............................................32

*Noor v. Homan*, No. 17-cv-1558,
 2018 WL 1313233 (E.D.N.Y. Feb. 27, 2018) ..........................................26

*NXIVM Corp. v. Ross Inst.*, 364 F.3d 471 (2d Cir. 2004)......................................21

*Oriakhi v. Dep't of Homeland Sec.*, 762 F. Supp. 3d 183 (E.D.N.Y. 2025),
 *aff'd*, No. 25-243, 2026 WL 303642 (2d Cir. Feb. 5, 2026)........................ 25, 29

*Pasquantino v. United States*, 544 U.S. 349 (2005) ...................................35

*Patel v. Garland*, 596 U.S. 328 (2022)...................................................33

*Perez v. United States*, Nos. 25-cv-3400, 9-cr-159,
 2025 WL 1558578 (S.D.N.Y. Jun. 3, 2025) ........................................... 26, 32

*Piao v. Lyons*, No. 25-cv-1725,
 2025 WL 3046783 (E.D. Va. Oct. 31, 2025)...........................................41

*Pineda v. Shanahan*, 258 F. Supp. 3d 372 (S.D.N.Y. 2017) ..............................42

*Rauda v. Jennings*, 55 F.4th 773 (9th Cir. 2022)......................................................32

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
   525 U.S. 471 (1999)..............................................................................................32

*Rodriguez v. Warden, Orange Cnty. Corr. Facility*, No. 23-cv-242,
   2023 WL 2632200 (S.D.N.Y. Mar. 23, 2023)........................................ 23, 33, 36

*Rodriguez-Guardado v. Smith*, 271 F.Supp.3d 331 (D. Mass. 2017).....................41

*Romag Fasteners, Inc. v. Fossil, Inc.*, 590 U.S. 212 (2020)...................................35

*Romero v. Noem*, No. 26-cv-1884,
   2026 WL 775847 (S.D.N.Y. Mar. 19, 2026).......................................................40

*Royale v. I.N.S*, No. 10-cv-2105,
   2010 WL 2348651 (E.D.N.Y. June 9, 2010) .......................................................26

*Ruiz-Martinez v. Mukasey*, 516 F.3d 102 (2d Cir. 2008) ......................................22

*Sauceda Henriquez v. Mullin*, No. 26-cv-2886,
   2026 WL 1552279 (E.D.N.Y. Jun. 1, 2026)............................................. 8, 17, 30

*Scott v. Napolitano*, 618 F. Supp. 2d 186 (E.D.N.Y. 2009) ............................ 26, 30

*Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80 (1943) ...............................46

*Siguencia-Romero v. Joyce*, No. 25-cv-8975,
   2025 WL 3090887(S.D.N.Y. Nov. 5. 2025)........................................................37

*Singh v. United States Citizenship & Immigr. Servs.*,
   878 F.3d 441 (2d Cir. 2017)................................................................. 24, 25, 27

*Spina v. Dep't of Homeland Sec.*, 470 F.3d 116 (2d Cir. 2006) ............................22

*Tavares-Tejada v. Mayorkas*, No. 22-cv-918,
   2022 WL 17413607 (W.D.N.Y. Dec. 5, 2022)........................................ 29, 31, 33

*Tazu v. Atty' Gen. United States*, 975 F.3d 292 (3d Cir. 2020) ..............................32

*Tenelema v. Freden*, No. 25-cv-902,
   2025 WL 3514099 (W.D.N.Y. Dec. 8, 2025)......................................................44

*Tenemea v. Noemi*, No. 25-cv-9066,
2026 WL 948309 (S.D.N.Y. Apr. 8, 2026) ........................................................44

*Torres-Jurado v. Biden*, No. 19-cv-3595,
2023 WL 7130898 (S.D.N.Y. Oct. 29, 20230 ...................................................35

*Troy as Next Friend Zhang v. Barr*, 822 Fed. Appx. 38 (2d Cir. 2020).................31

*Vasquez v. United States*, No. 15-cv-3946,
2015 WL 4619805 (S.D.N.Y. Aug. 3, 2015)............................................... 32, 33

*Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020)..........................................21

*Villatoro v. Noem*, No. 25-cv-5306,
2025 WL 2880140 (E.D.N.Y. Oct. 9, 2025).................................... 25, 26, 27, 30

*Wang v. Ashcroft*, 320 F.3d 130 (2d Cir. 2003)....................................................38

*You, Xiu Qing v. Nielsen*, 321 F. Supp. 3d 451 (S.D.N.Y. 2018)..........................35

*Zadvydas v. Davis*, 533 U.S. 678 (2001) ........................... 37, 39, 40, 41, 42, 43, 45

## Statutes

5 U.S.C. § 704 ........................................................................................................38

5 U.S.C. §§ 701-06.................................................................................................15

8 U.S.C. § 1101(a)(47)(B) ......................................................................................38

8 U.S.C. § 1182(a)(6)(A)(i) ................................................................................ 6, 43

8 U.S.C. § 1231 ............................................................................................ 28, 38, 39

8 U.S.C. § 1231(a) ........................................................................................... 39, 40

8 U.S.C. § 1231(a)(6)........................................................ 6, 11, 28, 39, 40, 43, 44

8 U.S.C. § 1252 ............................................................................................... 30, 38

8 U.S.C. § 1252(a) .................................................................................................26

8 U.S.C. § 1252(a)(2)(B) .................................................................................. 33, 34

8 U.S.C. § 1252(a)(5).................... 5, 19, 22, 23, 24, 25, 26, 27, 29, 30, 31, 36, 37

8 U.S.C. § 1252(b)(9)............................ 5, 19, 22, 23, 24, 25, 26, 27, 29, 30, 31, 36

8 U.S.C. § 1252(g) .................................................. 5, 18, 19, 31, 32, 33, 34, 35, 36

28 U.S.C. § 2241 ...........................................................................................21

## Regulations

8 C.F.R. §  214.205(a)(1)-(2) ...........................................................................45

8 C.F.R. § 214.211(b)(3)(ii) .............................................................................44

8 C.F.R. § 241.6(a)..........................................................................................44

8 C.F.R § 1241.1(a).................................................................................. 8, 38

## Rules

Fed. R. App. P. 30(b)(1).....................................................................................1

## PRELIMINARY STATEMENT

This brief is submitted by Respondents-Appellees Department of Homeland Security Secretary Markwayne Mullin, Acting U.S. Attorney General Todd Blanche, U.S. Citizenship and Immigration Services ("USCIS") Director Joseph B. Edlow, Immigration and Customs Enforcement ("ICE") Executive Associate Director Marcos Charles, and Jeffrey Oestericher[1] (the "Government"). Petitioners-Appellants Ingrid Paola Sauceda Henriquez ("Henriquez"), A.C.S. by and through the minor's mother Henriquez, and P.S.H., by and through the minor's mother Henriquez[2] (together "Appellants") appeal from the memorandum and order of the United States District Court for the Eastern District of New York (DeArcy Hall, J.), dated January 15, 2026 ("decision"), and the corresponding judgment entered on January 16, 2026. *See* Appendix ("A")[3] 6(##15, 16), 101-09.

---

[1] Jeffrey Oestericher is Chief of the Civil Division of the U.S. Attorney's Office for the Southern District of New York. The underlying habeas petition was filed in the United States District Court for the Southern District of New York, but he is not referenced in the habeas petition except in the caption-box and is not a proper party to this suit.

[2] P.S.H., a minor and U.S. citizen, born after Henriquez had unlawfully entered the United States, was never ordered removed. The sole reason that ICE kept P.S.H. together with P.S.H.'s mother and sibling for the removal giving rise to the underlying habeas petition is that P.S.H.'s mother, Henriquez, affirmatively chose to keep the family unit together for removal.

[3] The Appendix, which was compiled by Appellants without the consultation required by Fed. R. App. P. 30(b)(1), includes documents not filed in the district court proceedings underlying this appeal.

1

By way of background, Henriquez and her minor child A.C.S. are the subjects of a final order of removal to Honduras. They acknowledged their removability to an immigration judge and, when ordered removed, appealed the removal order to the Board of Immigration Appeals ("BIA"). That removal order became administratively final on December 28, 2023. In 2025, ICE twice offered them the option to make their own departure arrangements, but each time they failed to do so. On December 20, 2025, ICE detained them for removal.

The December 20, 2025 detention was narrowly tailored to removal: Henriquez, A.C.S., and P.S.H. were flown out of New York on December 21, 2025, and were scheduled to depart to Honduras the morning of December 22, 2025. Indeed, on the morning of December 22, they were taken to the airport in Louisiana for that flight abroad.

However, in the interim, Appellants had filed the underlying habeas petition in the United States District Court for the Southern District of New York ("S.D.N.Y.") – which, inter alia, sought a release from detention and stay of the removal – and the S.D.N.Y. judge had issued an order on December 21, 2025, staying removal for the pendency of the litigation. Therefore, ICE did not remove Appellants from Louisiana to Honduras the morning of December 22; the December 21 S.D.N.Y. order was, however, the sole reason that Appellants were not removed from the United States within two days of being detained in New York.

2

The same district judge who stayed removal also transferred the habeas action to the United States District Court for the Eastern District of New York. The transferee district judge denied the habeas petition on January 15, 2026, which decision Appellants here appeal. In the interim, Appellants had been released by ICE because of the length of time the minors would otherwise have been detained, but ICE has required check-ins, and has again afforded Henriquez and A.C.S. (and P.S.H., if Henriquez wishes, as the mother, to keep P.S.H. with her for removal) opportunities to depart on their own, requesting tickets. In February 2026, during the pendency of this appeal, Appellants moved this Court for a stay of removal, which this Court denied on April 8, 2026.

Separately, in March 2026, Henriquez and A.C.S. had filed with this Court a petition for review ("PFR") as to the BIA's denial of their motion to reopen their removal proceedings, *see Henriquez v. Bondi,* No. 26-492 (2d Cir.), and sought a stay of removal in the PFR as well. On April 8, 2026, this Court also denied a stay of removal in the PFR. Subsequently, in June 2026, without filing their principal brief in the PFR, Henriquez and A.C.S. withdrew the PFR.

Henriquez and A.C.S. continue, however, to maintain that their removal should be stayed because, among the raft of applications filed with USCIS after being ordered removed, shortly before ICE attempted to remove them, Henriquez filed, in June 2025, a Form I-914, Application for T Nonimmigrant Status ("T visa

3

application"). They argue that when USCIS eventually adjudicates the T visa application, and *if* the adjudication is favorable, that will protect them from removal, and that therefore removal should be stayed until such event occurs. They do not assert that they have applied to USCIS to expedite that process. They do not materially distinguish the merits of the appeal from the application to stay removal pending appeal, similarly predicated on the T visa application, which this Court has already denied.

In fact, with one breath, Appellants assert contradictory propositions. They say they are not seeking a stay of the final removal order that ICE tried to effectuate in December 2025, or to collaterally attack it, such that the jurisdictional bars fail to apply. Yet having repeatedly declined invitations to make their own departure arrangements, Henriquez and A.C.S. leave ICE only with the choice to effectuate removal by detaining them to remove them, as ICE attempted to do in December 2025. In order to evade the jurisdictional bars, Appellants purport to desire not to be detained while the removal order is effectuated, without explaining how the two – detention-for-the-purpose-of-removal and effectuation of the removal order – are not, in this instance, one and the same. Indeed, Appellants have declined, including during the pendency of this appeal, to make their own departure arrangements, leaving detention the only path forward for ICE to effectuate the removal order. Thus, their attempt to distinguish between detention and effectuating removal fails.

In its decision, the district court correctly denied the habeas petition on jurisdictional grounds, pursuant to the bars Congress enacted at 8 U.S.C. §§ 1252(a)(5), (b)(9) and (g) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq*. This Court has held that these bars preclude even indirect challenges to final orders of removal, include petitions alleging delays in adjudicating benefits, where an adjudication, if successful, would invalidate or nullify a final removal order. Appellants' attempt to stay their removal is thus contrary to the jurisdiction stripping provisions.

For the reasons set forth below, this Court should affirm the judgment denying the habeas petition in its entirety.

### ISSUES PRESENTED FOR REVIEW

Whether the habeas petition, insofar as it sought a stay of removal was barred under 8 U.S.C. §§ 1252(a)(5), (b)(9) and (g)?

Whether the habeas petition, insofar as it sought release from detention narrowly effected to execute the stay of removal was barred under 8 U.S.C. §§ 1252(a)(5), (b)(9) and (g)?

Whether, even if there were jurisdiction to review such claim, the detention of Henriquez and ACS to effectuate their removal was proper under 8 U.S.C. § 1231(a)(6)?

**STATEMENT OF THE CASE**

A.      **Relevant Factual Background**

1.  **Henriquez and A.C.S. Enter Unlawfully and in December 2023 are Ordered Removed to Honduras**

Appellants are Henriquez and her minor children A.C.S. and P.S.H. A72 ¶ 3. Henriquez is a Honduran national, and her minor child A.C.S. is also a Honduran national; both unlawfully crossed the border into the United States without inspection, admission, or parole, near Roma, Texas, on August 6, 2021. A73 ¶¶ 3-4. P.S.H, another minor member of this family unit, was born in October 2021, after the illegal entry to the United States; P.S.H. is a U.S. citizen and has never been placed in removal proceedings. A73 ¶ 3.

After it was determined by United States Customs and Border Protection ("CBP"), that Henriquez and A.C.S. had unlawfully entered the United States, they were arrested and transported to the Donna Texas Holding Facility for further processing. A73 ¶ 4.

On August 7, 2021, CBP personally served Henriquez and A.C.S. a Notice to Appear ("NTA"), charging them as inadmissible under INA § 212(a)(6)(A)(i) [8 U.S.C. § 1182(a)(6)(A)(i)], as aliens present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General. A73 ¶ 5; A115. The NTA advised Henriquez and A.C.S. to appear before an immigration judge at the immigration

6

courthouse located at 201 Varick Street, New York, New York ("Varick Immigration Court") on December 17, 2021. A73 ¶ 5; A115. On August 7, 2021, Henriquez and A.C.S. were released on their own recognizance by an Order of Release on Recognizance. A73 ¶ 6.

On October 21, 2021, notice was sent to Henriquez and A.C.S. that their matter had been reset to November 22, 2021, and was transferred to the docket of the Immigration Court located at 290 Broadway, New York, New York, ("Broadway Immigration Court"). A74 ¶ 7. On November 22, 2021, Henriquez and A.C.S. appeared pro se for their first master calendar hearing before an immigration judge at the Broadway Immigration Court. A74 ¶ 8. The matter was reset to January 31, 2022, to allow them time to find an attorney. A74 ¶ 8. The hearing on January 3, 2022, was adjourned by the Broadway Immigration Court *sua sponte.* A74 ¶ 9. The matter was rescheduled for a master hearing on April 25, 2022. A74 ¶ 9.

On April 25, 2022, Henriquez and A.C.S. appeared with counsel for their second master calendar hearing before an immigration judge at the Broadway Immigration Court. A74 ¶ 10. Pleadings were taken and Henriquez and A.C.S. admitted to the allegations contained in the NTA and conceded removability. A74 ¶ 10. The matter was reset to July 8, 2022 for an individual merits hearing. A74 ¶ 10.

On July 8, 2022, at the conclusion of the individual merits hearing, Henriquez and A.C.S. were ordered removed to Honduras by an immigration judge at the

7

Broadway Immigration Court. A74 ¶ 11; A112-13. On August 4, 2022, Henriquez

and A.C.S. filed an appeal with Board of Immigration Appeals ("BIA"). A74 ¶ 12.

On December 28, 2023, the BIA dismissed the appeal. A74 ¶ 13. When the

BIA dismissed the appeal of the removal order on December 28, 2023, Henriquez

and A.C.S.'s order of removal became administratively final. A74 ¶ 13; *see also* 8

C.F.R § 1241.1(a).

### 2. Upon Being Ordered Removed, Henriquez and A.C.S. Twice Decline ICE's Invitations to Voluntarily Depart, and Instead File a Panoply of Applications with USCIS

On January 7, 2024, A.C.S.'s application to USCIS for a Form I-360 Petition

for Amerasian, Widow(er) or Special Immigrant was approved. A74-75 ¶ 14. This

approval, classifying A.C.S. as Special Immigrant Juvenile ("SIJ classification"),

neither granted A.C.S. lawful status nor enabled A.C.S.'s mother, Henriquez, to

adjust her status or classification. A75 ¶ 14.[4]

On March 6, 2025, ICE instructed Henriquez to arrange her own departure

from the United States in compliance with her final removal order, by producing to

---

[4] USCIS also granted A.C.S. deferred action from removal. A75 ¶ 14. The habeas petition challenged the removal on the grounds of deferred action, but the Government submitted evidence that the deferred action was later terminated, A76 ¶ 22 & Ex. A and Appellants, on appeal, no longer raise the relevance of the deferred action. *See generally* Pl. Br. Further discussion of the SIJ classification and deferred action can be found in another district court action filed by the Henriquez, A.C.S., and P.S.H.: *Sauceda Henriquez v. Mullin*, No. 26-cv-2886 (LDH) (ST), 2026 WL 1552279 (E.D.N.Y. Jun. 1, 2026) ("*Henriquez II*"), ECF 6-2 (Declaration of Frederick Miller, dated May 20, 2026) (filed under seal) ¶¶ 4-7.

ICE an itinerary no later than April 7, 2025, with a date of departure no later than May 7, 2025. A75 ¶ 15. She failed to comply with this opportunity to arrange her own departure. A75 ¶ 15.

On March 10, 2025, Henriquez filed with USCIS her own Form I-360 Petition for Amerasian, Widow(er) or Special Immigrant ("I-360"), a Form I-485 Application to Register Permanent Residence to Adjust Status (I-485), a Form I-601 Application for Waiver of Grounds of Inadmissibility, a Form I-765 Application for Employment Authorization, and a Form I-131 Application for Travel Documents, Parole Documents, and Arrival/Departure Records. A75 ¶ 16. Of these, as of December 2025, only the I-765 application has been approved – as one can apply for work authorization if one has a pending I-485 application – and Appellants do not assert that any other applications have been approved since. A75 ¶ 16; *see generally* Pl. Br.[5]

On March 13, 2025, Henriquez attempted to file with the Broadway Immigration Court a motion to reopen her removal proceedings, on the basis of her then-pending I-360, but the filing was rejected for failure to pay the required fee and failure to include a change of address form. A75 ¶ 17. She did not resubmit that motion. A75 ¶ 17. On June 4, 2025, Henriquez and ACS filed a new motion to

---

[5] Indeed, in January 2026 she withdrew the I-360, and USCIS denied the I-485, and revoked any work authorization based on the pendency of the I-485.

reopen with the BIA and a motion for an emergency stay. A75 ¶ 18.[6]

On June 25, 2025, in addition to the other applications filed with USCIS, Henriquez filed with USCIS a T visa application. A125. That application remains pending. Pl. Br. 2, 7, 28; ECF 7.2 ¶ 4.

On July 24, 2025, ICE instructed Henriquez to report back to ICE for tickets for departing the United States, which she again did not do. A76 ¶ 18.

### 3. ICE Effectuates the Final Order of Removal on December 20, 2025

On September 6, 2025, ICE informed Henriquez's counsel that her request to ICE to stay removal had been denied, and that departure was required. A76 ¶ 20. On November 4, 2025, Henriquez, A.C.S., and P.S.H were asked to provide passports to ICE, and they complied. A76 ¶ 21. On December 12, 2025, USCIS issued a termination notice as to A.C.S.'s deferred action. A76 ¶ 22 & Ex. A.

On December 20, 2025, ICE encountered Henriquez, A.C.S., and P.S.H. at 26 Federal Plaza, New York, New York. A76 ¶ 23. Neither Henriquez nor A.C.S. had an approved application that would prevent removal, and ICE had cancelled their August 2021 Order of Release on Recognizance. A76 ¶ 23. On December 20, they

---

[6] Motions to reopen or reconsider a prior Board decision do not automatically result in a stay of removal. A76 ¶ 18. In any event, in February 2026, this motion to reopen was denied, A118-19, and thereafter, in March 2026, Henriquez and A.C.S. filed a (now withdrawn) PFR. *See Henrriquez v. Blanche,* No. 26-492 (2d Cir.); Pl. Br. 10; *see also* Statement of the Case, *infra* Part C.1-2.

were detained for the purpose of removal to Honduras pursuant to 8 U.S.C. § 1231(a)(6) [INA § 241(a)(6)]. A76 ¶ 23.

Henriquez chose to keep P.S.H. with her, even though P.S.H. is not subject to any order of removal. A76 ¶ 24. Henriquez was offered a choice and spoke to her family before making that decision on December 20, 2025. A76 ¶ 24.

Also on December 20, 2025, ICE transported Henriquez, A.C.S., and P.S.H. to temporary accommodations, a hotel near New York LaGuardia Airport in Queens, New York. A76-77 ¶ 25. These accommodations were used because of the presence of minor children. A77 ¶ 25. This habeas action was filed in S.D.N.Y on December 20, 2025, while Henriquez, A.C.S., and P.S.H. were located in these temporary accommodations in Queens, New York. A47.

On December 21, 2025, at approximately 9:20 a.m., ICE checked Henriquez, A.C.S., and P.S.H., out of the hotel and took them to Newark International Airport, in Newark, New Jersey, for a flight that departed Newark International Airport at approximately 1:20 p.m. A77 ¶ 26.

**B.  Proceedings in the District Court**

    **1.  But for the December 21 Order Staying Removal Pending Outcome of this Habeas Suit, Henriquez and A.C.S. Would Have Departed to Honduras on December 22, 2025**

On the afternoon of December 21, 2025 -- after Henriquez, A.C.S., and P.S.H. had already left Newark, New Jersey by plane -- the S.D.N.Y. district judge then

handling their habeas petition, ordered that they not be removed from the United States pending further order (the "December 21 Order"). A77 ¶ 27; A45; A3(#5).[7]

On December 22, 2025, at approximately 12:15 a.m. Central Standard Time, after a layover in Detroit and stop in Dallas, Henriquez, A.C.S., and P.S.H. were transported by ground to Alexandria, Louisiana, and were checked into temporary accommodations at a hotel in Alexandria, Louisiana, near the airport, to await an imminent removal flight. A77 ¶ 28. Although Henriquez, A.C.S., and P.S.H. were brought to the airport for their flight to Honduras, by approximately 9:00 a.m. on December 22, they were returned to the hotel in compliance with the December 21 Order staying removal pending further order. A77 ¶ 28.

The South Texas Family Residential Center, located in Dilley, Texas, is the only ICE facility in the country equipped to accommodate family units. A77 ¶ 29 However, due to the presence of a U.S. citizen -- P.S.H. -- in this particular family unit, the family could not be accommodated at the South Texas Family Residential Center. A77 ¶ 29. Therefore, ICE had arranged for temporary accommodations at a

---

[7] The December 21 Order also directed that they not leave the Southern or Eastern Districts of New York, or the District of New Jersey, but by that time the plane had already left the District of New Jersey. A46; A3(#5); A77 ¶ 27.

12

hotel near the staging area so that the family unit could remain intact pending the outcome of the habeas action. A78 ¶ 29.[8]

On December 22, 2025 -- because an issue had been raised by Henriquez's counsel at an initial court conference on December 22, 2025, in the Southern District of New York -- an on-site nurse medically examined Henriquez, A.C.S., and P.S.H. and indicated that the family was in good condition. A78 ¶ 30. The nurse did find that P.S.H. was showing a few mild cold symptoms, but was doing well, smiling, playing, and appeared to be in good spirits. A78 ¶ 30. The nurse confirmed that no medication was needed at that time. A78 ¶ 30.

Henriquez, A.C.S., and P.S.H. all have valid travel documents. A78 ¶ 31. Generally, there are ten removal flights to Honduras each week. A78 ¶ 32. In ICE's December 24, 2025 return to the habeas petition, ICE informed the district court in the Eastern District New York that, once the district court's stay of removal was lifted, ICE intended to forward with removal, pursuant to a valid final order of removal. A78 ¶ 32.

---

[8] Meanwhile, Henriquez signed the parent's interest election form, reflecting that she desired to keep her U.S. citizen child, P.S.H., with her when she was removed. *Henriquez II*, ECF 6-3 (Declaration of Achilles Shinas, dated May 20, 2026 ("Shinas Decl.") (filed under seal) ¶31.

### 2. Upon Transfer to the Eastern District of New York, the Government Responds to the Habeas Suit

The December 21 Order issued by the Honorable Vernon S. Broderick, United States District Judge for the Southern District of New York, also set December 24, 2025 for the Government's response to the habeas petition. A3(#5); A46. On December 22, 2025, Judge Broderick transferred the habeas suit to the Eastern District of New York, because Petitioners had been detained in the Eastern District of New York at the time suit was filed, leaving further action on the habeas petition to the transferee court. A4(#6); A47-48.

On the morning of December 24, 2025, the Honorable LaShann DeArcy Hall, United States District Judge for the Eastern District of New York, assigned to this case, directed the Government to adhere to Judge Broderick's schedule. A5(Order, dated Dec. 24, 2025). Accordingly, shortly before midnight on December 24, 2025, the Government filed a response to the habeas petition. A5(#10). Petitioners filed their reply on December 30, 2025. A5(#11).

On January 6, 2026, with the habeas petition still *sub judice,* the Government filed a letter advising the court that Henriquez, A.C.S., and P.S.H. were being detained strictly for the purposes of removal, and had been about to board a plane to be removed, but were being detained for two weeks at a hotel near an airport because of the December 21 Order staying removal. A5(#14); A99. That letter also stated that ICE was under a time-constraint in detaining minors for more than 20 days given

14

the class action consent decree in *Flores v. Lynch,* 212 F.Supp.3d 907, 914 (C.D. Cal. 2015), *aff'd in part, rev'd in part and remanded,* 828 F.3d 898 (9th Cir. 2016), and intended to keep the children together with their mother, and thus renewed the request to dissolve the December 21 Order. A5(#14); A99-100.

On January 7, 2026, Henriquez, A.C.S., and P.S.H were released and placed on an order of supervision ("OSUP"). A124; *Henriquez II,*[9] ECF 6-3 (Shinas Decl.) ¶34. Under the OSUP, Henriquez is required to check-in with her case specialist every two weeks. *Henriquez II*, ECF 6-3 (Shinas Decl.) ¶34.

On January 15, 2026, Judge DeArcy Hall denied the habeas Petition, but also enjoined the Government from removing Henriquez, A.C.S., and P.S.H. through January 29, 2026 to enable them to seek appellate relief. A6 (#15); A101-09. On January 16, 2026, judgment was entered. A6 (#16). On January 28, 2026, Henriquez, A.C.S., and P.S.H. timely filed a notice of appeal. A6 (#16); A111.

---

[9] In addition to this habeas action, Henriquez filed yet another district court action, *Henriquez II,* under the Administrative Procedure Act, 5 U.S.C. §§ 701-06 ("APA"), challenging alleged USCIS delay in adjudicating the T visa application and other USCIS decision-making, and seeking a preliminary injunction. The district court denied emergency relief and dismissed the second action in its entirety, as set forth in more detail *infra* Statement of the Case, Part C.4.

**C.     Developments Since the District Court Denied the Habeas Petition**

**1.  The BIA Denies Henriquez's and A.C.S.'s Motion to Reopen and Voluntary Departure is Again Offered**

On February 13, 2026, the BIA denied the motion by Henriquez and A.C.S. to reopen their removal proceedings. A118-19.

On February 18, 2026, ICE gave Henriquez and A.C.S. (and subject to Henriquez's wishes, as the parent, P.S.H.) 15 days to obtain tickets (which were required to be one-way, without stops, to Honduras), and 30 days to depart the United States from John F. Kennedy International Airport, in lieu of being removed by ICE and placed on an ICE charter flight. A121; ECF 21. They were advised that if they failed to do so, or to utilize the "CBP Home" mobile application to effectuate their departure, by March 4, 2026, ICE would refer the family to a check-in, where the family would most likely be detained for removal. A121-22; ECF 21.

**2.  Instead, Henriquez and A.C.S. File a PFR, Lose a Stay Motion, and Withdraw Their PFR**

On March 4, 2026, instead of pursuing either option referenced above, Henriquez and A.C.S. filed a PFR in this Court, *Henrriquez v. Blanche,* No. 26-492 (2d Cir.). Pl. Br. 10. On March 9, 2026 They also filed an application in the PFR seeking a stay of removal. *Henrriquez v. Blanche,* No. 26-492 (2d Cir.), ACMS 10.

On April 8, 2026, after argument, this Court declined to stay removal in the PFR. *Henrriquez v. Blanche,* No. 26-492 (2d Cir.), ACMS 32

16

Without filing their principal brief in the PFR, Henriquez and A.C.S. elected to withdraw the PFR. *Henrriquez v. Blanche,* No. 26-492 (2d Cir.), ACMS 39-40, 43-44.

### 3. This Court, Earlier in this Appeal, Declines to Stay Removal

As noted above, in addition to seeking a stay of removal in the PFR, Appellants also filed a motion in this appeal to stay removal. ACMS 7.

On April 8, 2026, after argument, this Court denied their motion. ACMS 27-28.

On April 29, 2026, Henriquez provided ICE proof that she had purchased two airplane tickets to depart the United States on May 14, 2026 – for herself and one of her minor children. *Henriquez II,* ECF 6-3 (Shinas Decl.) ¶ 39. Also on April 29, Henriquez applied to ICE for a stay of removal, which was denied on May 13, 2026. *Henriquez II,* ECF 6-3 (Shinas Decl.) ¶ 40. On May 14, 2026, Henriquez told ICE she would not be using the tickets. *Henriquez II,* ECF 6-3 (Shinas Decl.) ¶ 44.[10]

### 4. Henriquez and A.C.S. File Another Suit, Seeking Emergency Relief, Unsuccessfully

Instead, on May 14, 2026, Henriquez, A.C.S., and P.S.H. filed *Sauceda Henriquez v. Mullin,* No. 26-cv-2886 (LDH) (ST), 2026 WL 1552279 (E.D.N.Y.

---

[10] Appellants' brief in this appeal reflects that they were scheduled to depart on May 14, 2026. Pl. Br. 9, 20, 24. In fact, as noted in the text, they did not use those tickets and instead filed another action in the district court (*Henriquez II*) on that date, seeking an emergency stay of removal.

17

June 1, 2026) ("*Henriquez II*"). That action challenged, inter alia, USCIS's supposedly unreasonable delay in adjudicating the T visa application, and sought a stay of removal, in addition to moving for a temporary restraining order and a preliminary injunction. On May 20, the Government filed (under seal) its response to the request for emergency relief. *Henriquez* II, ECF 6-1, 2, 3, 4, 5.

On June 1, 2026, the district court denied the request for preliminary relief, finding lack of subject matter jurisdiction. *Henriquez* II, ECF 9. On July 20, 2026, the Government sought dismissal of the action in its entirety. *Henriquez* II, ECF 10.

On July 24, 2026, the district court directed that judgment be entered in favor of the Government, in view of the June 1, 2026 Order. *Henriquez* II, ECF 11.

### 5. Henriquez and A.C.S. Remain in the United States

ICE has not yet scheduled the date for the family unit removal plan on an ICE family unit charter flight, and remains amenable to a near-term voluntary departure for Henriquez and A.C.S. *Henriquez II,* ECF 6-3 (Shinas Decl.) ¶ 48.

### D.    The District Court Decision

In its decision, the district court denied the habeas petition for lack of subject matter jurisdiction. A6(#15); A109. The district court first found what Henriquez, A.C.S, and P.S.H. were seeking was a stay of removal, in effect, A106, and that 8 U.S.C. § 1252(g) barred review, because it was a "request to delay execution of a final removal order," A107-08. The district court further found that to the extent that

18

Henriquez, A.C.S., and P.S.H. challenged their detention as violative of the Due Process and Suspension Clauses, or of the APA, they were really asking that ICE be prohibited from executing the final removal order, in the hope that USCIS would grant the T visa application, which, if granted, would obviate the removal order. A108-09. This challenge to removal, the district court concluded, is barred by 8 U.S.C. §§ 1252(a)(5) and (b)(9), which do not allow even indirect challenges to final removal orders. A108-09.

In sum, the district court denied the habeas petition, but also enjoined the Government from removing Henriquez, A.C.S., and P.S.H. through January 29, 2026 to enable them to seek appellate relief. A6 (#15); A101-09. On January 15, 2026, the district court directed the Clerk of the Court to enter judgment. A6 (#16) (judgment).

Appellants filed a timely notice of appeal on January 28, 2026. A8 (#17).

## SUMMARY OF THE ARGUMENT

The district court correctly concluded that it lacked jurisdiction to entertain the habeas petition, which ostensibly challenged "detention" but also sought to enjoin removal, in part until the T visa application would be adjudicated. The district court recognized that detention here was limited to effectuating the final order of removal, and the district court reasoned rightly that, variously, 8 U.S.C. §§ 1252(a)(5), (b)(9) and (g) barred collateral attacks on an order of removal,

19

including claims predicated on an alien's stated desire to remain in the country while various applications remained pending.

On appeal, Appellants argue that the habeas petition was unrelated to the order of removal and that they did not seek to invalidate it. But those contentions are belied by their already having sought a stay of removal on this appeal. Appellants also contend on appeal that no removal should take place during the pendency of Henriquez's T visa application because, if the adjudication is favorable, then she could not be removed.

This Court has read the jurisdictional bars in Section 1252 to preclude even indirect attacks on an order of removal, including attempts to stay removal in order to attempt a secure a benefit, which is, effectively, what Appellants here seek. Indeed, earlier in this appeal, where Appellants sought a stay of removal based in part on a T visa application, this Court denied their application for a stay.

What Appellants may not do is circumvent the various jurisdictional bars by artful pleading asserting that they are seeking time for USCIS to adjudicate the T visa application -- in essence a stay of removal -- or by asserting that they only want to be free of detention, and not removal, when in reality their detention was very narrowly tailored to effect a removal.

In sum, this Court's affirmance of the district court's decision is warranted.

# ARGUMENT

## THE DISTRICT COURT PROPERLY
## DENIED THE HABEAS PETITION

**A.** **Standard of Review, and Standards Governing Denial of a Writ of Habeas**

This Court reviews *de novo* a district court's grant or denial of a habeas petition brought under 28 U.S.C. § 2241. *Black v. Decker*, 103 F.4th 133, 142 (2d Cir. 2024) (citing *Velasco Lopez v. Decker*, 978 F.3d 842, 848 (2d Cir. 2020)).

Furthermore, in general, conclusions of law are reviewed *de novo* on appeal, whether the legal conclusions were issued during a trial or a hearing, *Diesel Props S.r.L. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 51 (2d Cir. 2011), in a written memorandum and order, *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 476 (2d Cir. 2004), or otherwise. Findings of fact are reviewed on appeal under a "clearly erroneous" standard. *See Bessemer Trust Co. v. Branin*, 618 F.3d 76, 85 (2d Cir. 2010); *Diesel Props S.r.L.*, 631 F.3d at 51.

**B.** **The District Court Correctly Found that the Jurisdictional Bars in § 1252 Preclude Subject Matter Jurisdiction over the Habeas Petition, Which Challenges Removal-Focused Detention and Sought a Stay of Removal**

    **1. Congress Barred Judicial Review of Final Removal Orders, Including Applications for Stays of Removal, in 8 U.S.C. §§ 1252(a)(5) and (b)(9), as a Collateral Attack on a Removal Order.**

In their habeas Petition, Appellants objected to being detained – even though the detention was for the purpose effectuating the order of removal – and also sought

to enjoin removal. Thus, they sought to prevent their removal from being effectuated. Congress has barred district court review of such claims in 8 U.S.C. § 1252(a)(5), which provides in relevant part that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal." As a corollary to § 1252(a)(5), Congress also provided, in 8 U.S.C. § 1252(b)(9), "[j]udicial review of all questions of law and fact" arising from a removal proceeding "shall be available only in judicial review of a final order" of removal, and "no court shall have jurisdiction . . . by any other provision of law . . . to review such an order or such questions of law or fact." 8 U.S.C. § 1252(b)(9). Thus, § 1252(a)(5) gives the courts of appeals exclusive jurisdiction over review of final orders of removal. *Ruiz-Martinez v. Mukasey,* 516 F.3d 102, 105 (2d Cir. 2008).

The "clear intent'" of Congress in enacting § 1252(a)(5) was "'to have all challenges to removal orders heard in a single forum, i.e., the courts of appeals," to wit, in a PFR from a BIA decision. *Spina v. DHS*, 470 F.3d 116, 124 (2d Cir. 2006) (citations and internal quotation marks omitted). "'[T]aken together, § 1252(a)(5) and § 1252(b)(9) mean that *any* issue – whether legal or factual – arising from *any* removal-related activity can be reviewed *only* through' a petition for review filed with an appropriate court of appeals." *Asylum Seeker Advoc. Project v. Barr*, 409 F. Supp. 3d 221, 224 (S.D.N.Y. 2019) (quoting *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031

22

(9th Cir. 2016) (emphasis by *J.E.F.M.*)); *accord Rodriguez v. Warden, Orange Cnty. Corr. Facility*, No. 23-cv-242, 2023 WL 2632200, at *4 (S.D.N.Y. Mar. 23, 2023).

This Court has construed §§ 1252(a)(5) and 1252(b)(9) broadly to preclude district courts from exercising subject matter jurisdiction over an action that even "indirectly challeng[es]" an order of removal. *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011). In determining whether an action challenges an order of removal, this Court looks to "the substance of the relief that [the] plaintiff is seeking." *Id.*

*Delgado* is instructive. In *Delgado*, the alien who was subject to a final order of removal filed an action in district court to compel USCIS to adjudicate her application for a waiver of inadmissibility. *Delgado*, 643 F.3d at 53-54. This Court held that §§ 1252(a)(5) and 1252(b)(9) precluded the district court from exercising jurisdiction over the action, because the action was a challenge to the order of removal: if USCIS were ordered to adjudicate the application, *and* were to grant the waiver, she would satisfy a necessary requirement for adjustment of status, *and* if she then succeeded in having her status adjusted, her removal order would be rendered invalid. *Id.* at 55.[11] Even though the connection required a chain of events, the removal order was being collaterally attacked, however indirectly.

---

[11] This Court also held that, due to the §§ 1252(a)(5) and 1252(b)(9) jurisdictional bars, there was no federal question jurisdiction for the two claims brought by Delgado, *i.e.*, claims under the APA and the Mandamus Act. *Id.*

23

As this Court recently observed in *Mahdawi v. Trump*, -- F.4th --, 2026 WL 2090981 (2d Cir. Jul. 21, 2026), in discussing the expansiveness of Section 1252(a)(5) (while reaching an expansive construction of Section 1252(b)(9))[12], "Delgado argued that she was not directly challenging her order of removal," because "even if she were to successfully obtain the [] waiver, this would not per se prevent her removal," but this Court found that since it was in fact, a step in a chain, however attenuated, leading to obtaining permanent residence that in turn would invalidate her removal order, "Delgado could not evade the restrictions of Section 1252(a)(5) through artful pleading." *Mahdawi*, -- F.4th --, 2026 WL 2090981, at *10 (citing *Delgado* 643 F.3d at 55-56; internal quotation marks omitted); *accord Singh v. United States Citizenship & Immigr. Servs.*, 878 F.3d 441, 445-46 (2d Cir. 2017) (holding that § 1252(a)(5) precluded the district court from exercising jurisdiction over an action to compel USCIS to adjudicate the merits of the plaintiff's application for permanent residence, because ordering USCIS to consider that application could lead USCIS to approve that application, which in turn would lead to the nullification

---

[12] The expansive reading is not needed here, because Appellants are not "challenging the government's very basis for trying to remove (and thus detain[]) [them]," as they concede the removal order is valid and only challenge its execution. *Mahdawi*, -- F.4th --, 2026 WL 2090981, at *8; *see also id.* at *10 ("It would be anomalous, at best, to conclude that § 1252(b)(9), unlike § 1252(a)(5), permits courts to exercise jurisdiction over claims that necessarily challenge removal simply because they are framed as a challenge to detention.")

of his removal order); *Oriakhi v. DHS*, 762 F. Supp. 3d 183, 185-86 (E.D.N.Y. 2025)

*aff'd*, No. 25-243, 2026 WL 303642 (2d Cir. Feb. 5, 2026) (dismissing as barred by

§ 1252(a)(5) action in which the petitioner, *inter alia*, sought a stay of removal

(citing *Delgado*, 643 F.3d at 55 and *Singh*, 878 F.3d at 445-46)); *Lopez Galvez v.*

*Noem*, 25-cv-3229, 2025 WL 1823549, at *1 (E.D.N.Y. Jul. 1, 2025) ("§ 1252(a)(5)

is a jurisdictional bar to [the court's] consideration of Petitioner's indirect challenge"

to her removal order).

Consistent with *Delgado*, many judges in this Circuit have held that

§ 1252(a)(5)'s bar on challenges to removal orders preclude district courts from

hearing a claim for a stay of removal. Some of these decisions also cite § 1252(b)(9).

*See*, *e.g., Caceres v. Mullin,* No. 26-cv-3759, 2026 WL 2111017, at *3-4 (E.D.N.Y.

Jul. 22, 2026) (denying habeas petition on §§ 1252(a)(5) and 1252(b)(9) grounds

where alien sought stay of removal); *Metreveli v. Flanagan*, No. 25-cv-8039, 2025

WL 3496754, at *4-5 (S.D.N.Y. Dec. 5, 2025) (§§ 1252(a)(5) and 1252(b)(9) barred

motion for stay of removal); *Villatoro v. Noem*, No. 25-cv-5306, 2025 WL 2880140,

at *4 (E.D.N.Y. Oct. 9, 2025) (concluding that § 1252(a)(5) bars claims for a stay of

removal because a stay would invalidate the removal order); *Lin v. Borgen*, No. 25-

cv-5618, 2025 WL 2158874, at *3 (S.D.N.Y. July 30, 2025) (concluding that

§§ 1252(a)(5) and 1252(b)(9) jurisdictionally bar, *inter alia,* motion to stay

execution of removal order); *Perez v. United States*, Nos. 25-cv-3400, 9-cr-159,

25

2025 WL 1558578, at *3 (S.D.N.Y. Jun. 3, 2025) (denying application for stay of removal as barred by § 1252(a)(5)); *Noor v. Homan*, No. 17-cv-1558, 2018 WL 1313233, at *3 (E.D.N.Y. Feb. 27, 2018) (holding that § 1252(a)(5) "bars a wide range of claims that were held to constitute challenges to removal orders, including requests for stays of removal") (citing *Delgado*, 643 F.3d at 55); *Joseph v. U.S. Att'y Gen.*, *Dep't of Homeland Sec.*, No. 17-cv-5008, 2017 WL 6001776, at *1 (E.D.N.Y. Dec. 4, 2017) ("Since District Courts cannot review removal orders, they also cannot consider requests for stays of removal.") (citing § 1252(a)(5)); *Akhuemokhan v. Holder*, No. 112-cv-1181, 2013 WL 6913170, at *2 (E.D.N.Y. Dec. 30, 2013) ("to the extent petitioner . . . is seeking a stay of, or any other relief from, his order of removal, this Court lacks jurisdiction to grant such relief") (citing § 1252(a)(5)); *Royale v. I.N.S*, No. 10-cv-2105, 2010 WL 2348651, at *1 (E.D.N.Y. June 9, 2010) (district courts lack "jurisdiction to stay an order of . . . removal") (citing § 1252(a)(5)); *Scott v. Napolitano*, 618 F. Supp. 2d 186, 191-92 (E.D.N.Y. 2009) (§§ 1252(a)(5) and 1252(b)(9) bar action to stay a removal order).

*Villatoro* involved facts similar to this action. Villatoro, asserting claims under, *inter alia*, the Due Process Clause and the APA, sought a stay of removal pending the adjudication of his application for a T visa. There, as here, the district court denied the petition as seeking relief barred by § 1252(a), holding that in asserting his right to a stay, Villatoro "is indirectly challenging his removal order".

26

*Villatoro*, 2025 WL 2880140, at *3 (citing *Singh*, 878 F.3d at 445 and *Delgado*, 643 F.3d at 55).

Relatedly, in *Asylum Seeker*, 409 F.Supp.3d 221, the plaintiff organizations challenged the validity of *in absentia* removal orders and sought, *inter alia*, a stay of removal to last until the individuals subject to those orders were given an administrative hearing on motions to vacate those orders. *Asylum Seeker* held that the claims were barred by §§ 1252(a)(5) and 1252(b)(9) as indirect challenges to removal orders because the plaintiffs' "'ultimate goal' is to challenge the removal orders themselves." *Asylum Seeker*, 409 F.Supp.3d at 225, 227 (quoting *Delgado*, 643 F.3d at 55).[13]

Appellants' efforts to reframe what they are seeking as something other than a challenge to removal, by repeatedly asserting that they are not seeking to invalidate the removal order, and instead seeking just to pause their removal to allow them to pursue other immigration benefits, Pl. Br. 15-16, 19, 23, are unavailing. To begin with, *Delgado* precludes artful pleading to avoid reframing what is in essence rendering a removal order a nullity, even if remote in the distant future or temporarily. Further, very recently in *Caceres,* 2026 WL 2111017, a habeas case similar to this one, the petitioner there, as here, was detained under Section

---

[13] *See* n.14 *infra*.

27

1231(a)(6), and there, as here, argued that the jurisdictional bars did not apply because he "does not seek to reopen, vacate, or invalidate his … removal order," but instead "challenges the constitutionality of Respondents' decision to deprive him of his liberty … following his release on recognizance" and asked for release "pending resolution of his immigration proceedings" because "[p]remature removal would preclude him from pursuing the forms of relief for which he may be eligible and would undermine his ability to seek protection under applicable immigration laws." *Id.* at *3. The district court reasoned that "[u]nder these circumstances…the petitioner is indirectly challenging his order of removal" and "asks the [district c]ourt to stay his removal." *Id.* at *4. The district court concluded that "while his detention is not mandatory under Section 1231, he is nonetheless detained pursuant to Section 1231 so that he can be removed from the country," such that the district court "does not have jurisdiction." *Id.* Here, as in *Caceres,* what Appellants seek is a stay of removal, regardless of framing, and here as in *Caceres,* Section 1252 bars jurisdiction outside of a PFR.

Nor does the fact that the habeas petition was liberally salted with the words "due process" alter this calculus. Consistent with *Delgado*, district courts in this Circuit have regularly dismissed actions on the grounds that the § 1252(a)(5) jurisdictional bar encompasses an action predicated on a claim that removal would violate a provision of the U.S. Constitution. For example*,* in *Huang v. Bondi*, No.

28

26-cv-406, 2026 WL 318195 (E.D.N.Y. Feb. 5, 2026), Huang contended that her removal order "should be vacated for violating due process," but the district court dismissed the action as a challenge to a final order of removal that is jurisdictionally barred by §§ 1252(a)(5) and 1252(b)(9), holding that Huang's only recourse was to file a PFR in the court of appeals. *Id.* at \*1 (citing *Delgado*, 643 F.3d at 55). Similarly, in *Oriakhi*, 762 F.Supp.3d 183, Oriakhi sought a district court order invalidating his removal order, claiming that his due process rights were violated because he had not been provided a notice to appear for his removal proceedings and was not afforded an opportunity to contest those proceedings. The district court dismissed the action as barred by § 1252(a)(5), holding that only courts of appeals may review removal orders. *Oriakhi*, 762 F.Supp.3d at 185-86; *accord Asylum Seeker*, 409 F.Supp.3d at 225-27 (quoting *Delgado*, 643 F.3d at 55); *Tavares-Tejada v. Mayorkas*, No. 22-cv-918, 2022 WL 17413607, at \*5 (W.D.N.Y. Dec. 5, 2022).[14]

---

[14] *But see Izaguirre v. Blanche,* No. 26-cv-2911, 2026 WL 2023200, at \*8 (E.D.N.Y. Jul. 13, 2026) (holding that, as to alien subject to final order of removal, where removal was not imminent, § 1252 jurisdictional bars failed to preclude detention challenges concerning method of being placed in detention, but nevertheless holding that "cases approving the jurisdictional argument… sought a stay of their orders of removal – the precise type of relief that *is* jurisdictionally barred") (emphasis in original); *Diallo v. Lyons*, -- F.Supp.3d --, 2026 WL 1791494, at \*3, 5-6 (E.D.N.Y. Jun. 22, 2026) (holding that, for alien subject to final order of removal, § 1252 jurisdictional bars failed to preclude detention challenge, contending that alien there did not challenge removal order, only his detention). In *Izaguirre*, where, as here, there was a final removal order, the facts did not show that removal was imminent, *i.e.*, that detention was purely for removal. 2026 WL 2023200, at \*8. *Diallo* is similarly distinguishable because, while there was a final removal order as here,

29

Thus, relief sought in the form of a stay of removal is a challenge to the removal order – at minimum, an indirect one -- that is barred by §§ 1252(a)(5) and 1252(b)(9). *Delgado*, 643 F.3d at 55; *Asylum Seeker*, 409 F. Supp. 3d at 225; *Scott*, 618 F. Supp. 2d at 191-92.

The jurisdictional bar also extends to claims predicated on alleged statutory violations. This Court applied that bar to claims under the APA in *Delgado*, 643 F.3d at 54-55. And the Court in *Villatoro* applied that bar to claims under the APA and the INA, which were premised on the contention that ICE lacked legal authority to remove the petitioner. *Villatoro*, 2025 WL 2880140 at *2-3 (citing § 1252(a)(5)); *see also Henriquez II*, 2026 WL 1552279, at *4 (E.D.N.Y. Jun. 1, 2026) (APA claim subject to §§ 1252(a)(5) and 1252(b)(9) bar).

---

there, unlike there, the facts reflected that removal was not, in fact, imminent at the time that the suit was filed, *i.e.,* that detention was purely for removal, and , and only became imminent during briefing. *Diallo,* -- F.Supp.3d --, 2026 WL 1791494, at *3. Here, unlike *Diallo*, detention would be narrowly removal-focused, such that detention and execution of removal are one and the same.

The holding in *Calderon v. Sessions*, 330 F.Supp.3d 944, 955-56 (S.D.N.Y. 2018), reasoning that Calderon had conceded the validity of his removal order and sought a stay only to seek a waiver of removal, is incorrect. *Asylum Seeker* perceptively noted that "the holding . . . ultimately seems to rest on 'the fiction' that the petitioner there was 'not challenging the execution of [his] removal order[ ] by seeking to stay it'" and concluding that the "Court is unable (and unwilling) to indulge in that fiction here." *Asylum Seeker*, 409 F.Supp.3d at 227 (quoting *Ashqar v. Hott*, No. 19-cv-716, 2019 WL 2712276, at *4 (E.D. Va. June 5, 2019)) (alterations by *Asylum Seeker*); *see also Lin*, 2025 WL 2158874, at *5 (criticizing *Calderon*).

### 2. Applications for Stays of Removal Are Barred Under Section 1252(g) as Challenges to the Execution of a Removal Order

Another Congressionally-enacted jurisdictional bar independently precludes review of claims seeking to stay removal, to wit: 8 U.S.C. § 1252(g). That provision provides, in relevant part, with exceptions not relevant here, that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action . . . to execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Section 1252(g) thereby precludes district courts from issuing an order that would prevent or hinder ICE from executing a removal order, *i.e.*, removing an individual who is the subject of a final order of removal. *Troy as Next Friend Zhang v. Barr*, 822 F. App'x 38, 39 (2d Cir. 2020).

For example, in *Troy,* this Court evaluated a stay of removal on behalf of an alien who ICE was allegedly seeking to remove in retaliation for his commencing an action against his employer for unpaid wages. Citing § 1252(g), this Court held that the "request for a stay was outside the [district] court's jurisdiction." *Troy*, 822 F. App'x at 39-40. Consistent with *Troy*, district courts in this Circuit have held that § 1252(g) bars claims for stays of removal. *Metreveli,* 2025 WL 3496754, at *6 (stay barred, *inter alia,* by § 1252(g)); *K.K. v. Garland*, No. 23-cv-6281, 2025 WL 274431, at *2 (W.D.N.Y. Jan. 23, 2025), *appeal dismissed*, No. 25-190 (2d Cir Apr. 8, 2025) (holding that § 1252(g) barred alien's claim for a stay of removal until his visa applications were adjudicated); *accord Tavares-Tejada*, 2022 WL 17413607, at

31

*5 (holding that § 1252(g) barred alien's claim for a stay of removal until his visa applications were adjudicated); *Perez*, 2025 WL 1558578, at *3 (holding that, *inter alia,* § 1252(g) barred alien's claim for a stay of removal barred ); *De Oliveira Jimenez v. Searls*, No. 22-cv-960, 2023 WL 11156340, at *3-4 (W.D.N.Y. Feb. 28, 2023) (same); *Vasquez v. United States*, No. 15-cv-3946, 2015 WL 4619805, at * 3-4 (S.D.N.Y. Aug. 3, 2015) (same); *Nieto-Ayala v. Holder*, No. 8-cv-8347, 2011 WL 3918156 at *4, n.2 (S.D.N.Y. Aug. 30, 2011) (same).

Notably, § 1252(g) bars *all* claims challenging the execution of a removal order, so the bar is not limited to claims that challenge ICE's discretionary conduct but extends to challenges to conduct that allegedly violates federal law, including without limitation a provision of the United States Constitution. *See, e.g.*, *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 488 (1999) (§ 1252(g) barred First Amendment challenge to deportation)*; K.K.*, 2025 WL 274431, at *2 (dismissing action alleging violations of "various constitutional, statutory and regulatory provisions") (citing, *inter alia, Rauda v. Jennings*, 55 F.4th 773, 777-78 (9th Cir. 2022), *Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1274 (11th Cir. 2021), *E.F.L. v. Prim*, 986 F.3d 959, 965 (7th Cir. 2021)); *accord Tazu v. Atty' Gen. United States*, 975 F.3d 292, 297 (3d Cir. 2020). "Otherwise, § 1252(g) would be a paper tiger; any petitioner challenging the execution of a removal order could characterize his or her claim as an attack on [ICE']s 'legal authority" to

32

execute the order and thereby avoid § 1252(g)'s bar." *E.F.L.*, 986 F.3d at 965 (affirming dismissal of action that challenged, on due process and statutory grounds, the execution of a removal order).

*Vasquez* is instructive: Vasquez argued that the court had jurisdiction over her claim for a stay of removal because she was "challenging the constitutionality of the actions of federal officials." *Vasquez*, 2015 WL 4619805, at *4. The district court rejected that argument, holding that jurisdiction was barred because "the relief sought by the current motion is a stay of her removal." *Id.* (dismissing, as barred by § 1252(g), action that alleged, *inter alia*, procedural and substantive due process claims); *accord Tavares-Tejada*, 2022 WL 17413607, at *4-5 (same); *see also Rodriguez*, 2023 WL 2632200, at *4 (same for due process challenge to detention of individual for the purpose of removing him).

The holdings of those decisions are consistent with Supreme Court case law on statutory construction. Section 1252(g) by its terms bars "*any* cause or claim" (emphasis added). The Supreme Court, in construing 8 U.S.C. § 1252(a)(2)(B) – which, like § 1252(g), was enacted as part of § 306 of the Illegal Immigration Reform and Immigration Responsibility Act of 1996, Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546 (1996) ("IIRIRA") -- held that "the word 'any' has an expansive meaning." *Patel v. Garland*, 596 U.S. 328, 338 (2022) (quotation omitted). *Patel's* construction of "any" in § 1252(a)(2)(B) applies with special force to the use of the

33

same word in § 1252(g) because of "the normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995) (internal quotation marks omitted). Thus, § 1252(g) bars any and all types of claims that challenge the execution of a removal order, including without limitation claims alleging violations of federal law.

Additional Supreme Court jurisprudence on statutory construction confirms that the § 1252(g) bar is not limited to claims that challenge ICE's discretionary conduct. Section 1252(g)'s wording contains no such limitation, and courts "may not engraft [their] own exceptions onto the statutory text." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 70 (2019). Notably, the Congress that enacted IIRIRA knew how to limit a jurisdiction-stripping statute's reach to discretionary matters when that Congress wished to do so. The aforementioned § 1252(a)(2)(B) bars challenges "to (i) any judgment regarding the granting of relief under [specified statutes], or (ii) any other decision or action . . . which is specified in this subchapter to be *in the discretion of* the Attorney General or the Secretary of Homeland Security [with one specified exception]" (emphasis added). Section 1252(g), by contrast, does *not* include any language limiting its reach to discretionary matters, and thus cannot be construed to include such a limitation. *See Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251-52 (2010). In *Hardt,* the

34

Supreme Court held that a party need not be a prevailing party in order to recover attorney's fees under one subsection of a statute, because the wording of that subsection included no prevailing-party requirement, while the wording of another subsection of the same statute did include such a requirement. *Id.* The Supreme Court described the court of appeals' reading of a prevailing-party requirement into the first subsection as akin to "'invent[ing] a statute rather than interpret[ing] one.'" *Id.* (quoting *Pasquantino v. United States*, 544 U.S. 349, 359 (2005) (alterations by *Hardt*); *accord Romag Fasteners, Inc. v. Fossil, Inc.*, 590 U.S. 212, 215 (2020) ("read[ing] into statutes words that aren't there . . . [is] a temptation that we are doubly careful to avoid when Congress has . . . included the term in question elsewhere in the very same statutory provision"; declining to construe one subsection of a statute as requiring the plaintiff to prove intent in order to prevail because, unlike that subsection, another subsection of the same statute expressly required proof of intent). Nine years after it enacted IIRIRA, Congress enacted the Real ID Act, Publ. L. 109-13 (May 11, 2005), which added language to §§ 1252(a)(2)(B) and 1252(g), but the language quoted above remains in those statutes.

In sum, § 1252(g) independently bars district court orders staying removal, regardless of whether Appellants challenge discretionary conduct.[15]

---

[15] Accordingly, decisions that limited the § 1252(g) bar to challenges to discretionary conduct are incorrect. *Calderon*, 330 F.Supp.3d at 955; *You, Xiu Qing v. Nielsen*, 321 F.Supp.3d 451, 457-58 (S.D.N.Y. 2018); *Torres-Jurado v. Biden*, No. 19-cv-

35

### 3. The Jurisdictional Bars in Section 1252 Preclude Subject Matter Jurisdiction over Claims Seeking Release from Detention Narrowly Effected to Achieve Removal

Furthermore, Appellants' attempt to distinguish detention from removal where the detention is plainly so narrowly tailored to effect removal, must fail. Several district courts in this Circuit have held that §§ 1252(a)(5), 1252(b)(9) and/or 1252(g) bar claims to enjoin ICE from detaining an individual for the purpose of removal. *Lin*, 2025 WL 2158874, at *3-4, relied on all three subsections in holding that the court lacked jurisdiction to order the release of an alien whom ICE had detained for the purpose of removing him. *Ceesay v. Bondi*, No. 25-cv-3716, 2025 WL 1435615, at *2 (S.D.N.Y. May 16, 2025), held that § 1252(a)(5) bars an action for an order prohibiting ICE from detaining Ceesay for the purpose of removing him, because such an order "would . . . interfere with the execution of a lawful removal order." *See also Rodriguez v. Warden* 2023 WL 2632200, at *4 (S.D.N.Y. Mar. 23, 2023) (dismissing action "seek[ing] an end to [Rodriguez's] detention, which was undertaken for the precise purpose of effectuating his existing removal orders"); *Bumu v. Barr*, No. 20-cv-6742, 2020 WL 6465433, at * 3 (W.D.N.Y. Nov. 3, 2020) (§ 1252(a)(5) bars challenge to detention that "threaten[s] the execution of the removal order"); *Achbani v. Homan*, No. 17-cv-1512, 2017 WL 4227649, at *3-5

---

3595, 2023 WL 7130898, at *2-3 (S.D.N.Y. Oct. 29, 2023); *Gondal v. U.S. Dep't of Homeland Sec.,* 343 F.Supp.3d 83, 92 (E.D.N.Y. 2018).

(D. Conn. Sept. 22, 2017) (dismissing claim for an order prohibiting ICE from detaining Achbani "in order to effectuate removal").

Here, ICE had detained Appellants for the purpose of removing them; the only bar to removing them was the S.D.N.Y. judge's December 21 order staying removal. A77-78 ¶¶ 27-29, 31-32. What Appellants seek, in effect, is to avoid being removed; indeed, ICE did not detain them until immediately before it was prepared to remove them, *id*. Moreover, the record reflects that ICE retains travel documents for Appellants and has frequent charter flights to Honduras, A78 ¶¶ 31-32, such that ICE can remove Appellants promptly upon re-detention.

Although Appellants talk largely about challenging "detention," here that is one and the same as removal; what they are actually are seeking is to forestall removal.

## C. Even If Review Were Not Jurisdictionally Barred, The Petition Was Properly Denied Because Detention Was Proper Under 8 U.S.C. § 1231

To the extent that this Court finds that the district court was not jurisdictionally barred from reviewing Appellants' habeas petition, it should hold that habeas relief was properly denied, as Appellants' detention is valid under *Zadvydas v. Davis*, 533 U.S. 678 (2001).[16]

---

[16] To the extent that this Court concludes the district court had jurisdiction under Section 1252 to review the habeas petition, which it should not, this Court should hold that the Suspension Clause claim and the APA claim are not viable as a matter of law. The Suspension Clause is inapposite because, for persons subject to

As an initial matter, pursuant to 8 U.S.C. § 1231, ICE has authority to detain an alien subject to a final removal order. 8 U.S.C. § 1231(a). *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) ("8 U.S.C. § 1231(a), governs the detention, release, and removal of individuals 'ordered removed.'"); *accord Wang v. Ashcroft*, 320 F.3d 130, 145 (2d Cir. 2003) ("8 U.S.C. § 1231, governs the detention of aliens subject to final orders of removal."). An order of removal by an immigration judge shall become final, inter alia, "upon dismissal of an appeal by the Board of Immigration Appeals." 8 C.F.R 1241.1(a); *Chupina v. Holder*, 570 F.3d 99, 103 (2d Cir. 2009) (interpreting 8 U.S.C. § 1101(a)(47)(B) to conclude that "[a]n order of removal is 'final' upon the earlier of the BIA's affirmance of the immigration judge's order of removal or the expiration of the time to appeal the immigration judge's order of removal to the BIA.").

---

immigration detention, Congress has provided adequate relief in the form of a PFR with the court of appeals, and the Section 1252 bars do not invalidate that avenue of relief that Congress has enacted. *Siguencia-Romero v. Joyce*, No. 25-cv-8975, 2025 WL 3090887, at *6, n.9 (S.D.N.Y. Nov. 5. 2025). Similarly, as to the APA claim, even if this Court were to find the district court had jurisdiction, which it did not, the APA is not the proper vehicle for claims arising out of detention that drive this suit. In *Trump v. J.G.G.*, 604 U.S. 670 (2025), in which claims including due process claims were brought under the APA, the INA and various habeas provisions, the Supreme Court held that where the claims for relief, as here, "necessarily imply the invalidity of their confinement," regardless of whether the alien requests release from confinement, those claims "fall within the 'core' of the writ of habeas corpus and must be brought in habeas." *See J.G.G.*, 604 U.S. at 672. Moreover, the APA sovereign immunity waiver is available only for agency action "for which there is no other adequate remedy in a court." 5 U.S.C. § 704.

38

Section 1231 establishes a 90-day "removal period" within which the government generally must secure removal after a removal order becomes final, and during which the government "shall detain the alien" until such removal. *See* 8 U.S.C. §§ 1231(a)(1)(A), (B)(i), (a)(2) ("During the removal period, the Attorney General shall detain the alien.").[17] The Supreme Court addressed the Government's authority to detain aliens after this 90-day removal period in *Zadvydas*, 533 U.S. 678. The Supreme Court held that 8 U.S.C. § 1231(a)(6), which states in relevant part that "an alien ordered removed who is inadmissible under section 1182 of this title . . . or unlikely to comply with the order of removal, may be detained beyond the removal period," authorizes immigration detention for a period reasonably necessary to effectuate the alien's removal from the United States, beyond 90 days, and that six months is a presumptively reasonable period of time for the government to effectuate the alien's removal. *Zadvydas*, 533 U.S. at 699-701. The Supreme Court also made it clear that this "presumption . . . does not mean that every alien not removed must be released after six months." *Id.* at 701; *see also Arteaga-Martinez*, 596 U.S. at 581 ("there is no plausible construction of the text of § 1231(a)(6) that

---

[17] Although the relevant statutory provisions refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002), transferred all immigration enforcement and administration functions vested in the Attorney General, with few exceptions, to the Secretary of the Department of Homeland Security.

requires the Government to provide bond hearings after six months of detention").

The six-month period runs from the date an alien is *actually* detained, not from the date the alien's removal order became final, and the alien *could* have been detained. *See Callender v. Shanahan*, 281 F. Supp.3d 428, 435 (S.D.N.Y. 2017) (habeas petitioner "is confusing the 90-day 'removal period' under [Section 1231(a)(1)(A)], which began when his order became final in 2006[,] with the six month 'presumptively reasonable period of detention' under *Zadvydas*, which could not have begun until he was detained by ICE in 2015") (citations omitted). This makes sense since the Supreme Court in *Zadvydas* was concerned with the potential for indefinite *detention* under Section § 1231(a)(6). *Zadvydas,* 533 U.S. at 690; *see also Romero v. Noem*, No. 26-cv-1884, 2026 WL 775847, at *5 (S.D.N.Y. Mar. 19, 2026) (denying habeas petition where § 1231(a)(1) removal period had long expired and finding detention proper under § 1231(a)(6), reasoning that "Petitioner advances the improbable proposition" that § 1231 "rewards inadmissible noncitizens who manage to evade authorities for at least 90 days after entry of a final order of removal," whereas the "better reading is that Section 1231(a)(6)'s plain text provides the Government with discretionary authority to take inadmissible noncitizens into custody after the initial removal period expires" and that, in any event, the government "indisputably has authority to remove Petitioner, and the authority to remove necessarily implies the authority to briefly detain the subject for purposes of

40

effecting the removal"); *Jiang v. Bondi,* No. CIV 25-0922, 2025 WL 3281819, at *2 (D.N.M. Nov. 25, 2025) (finding detention proper where removal period had begun to run 20 years earlier, because petitioner "confuses the 90-day removal period" with the "six-month "presumptively reasonable period of detention" under *Zadvydas*, which could not have begun until he was detained by ICE"); *Piao v. Lyons,* No. 25-cv-1725, 2025 WL 3046783, at *2 (E.D. Va. Oct. 31, 2025) (concluding "as has other courts, that the government's failure to detain the Petitioner during the removal period or immediately thereafter does not eliminate the Government's ability to detain Petitioner for the purpose of enforcing that removal order at this time"); *Rodriguez-Guardado v. Smith*, 271 F. Supp. 3d 331, 335 n.8 (D. Mass. 2017) ("Petitioner's contention that the *Zadvydas* clock runs while he is not in custody defies common sense.") (internal quotation marks and citation omitted); *Chun Yat Ma v. Asher*, No. C11-1797, 2012 WL 1432229, at *3 (W.D. Wash. Apr. 25, 2012) (noting that "detention is the core issue in *Zadvydas*" and holding that "the time between Petitioner's removal order becoming final and his detention does not impact the due process analysis established by *Zadvydas*"); *cf. Diallo v. Joyce,* 817 F. Supp. 3d 202, at 208 (S.D.N.Y. 2025) (acknowledging, even while rejecting proposition that the six-month period of detention may begin over a decade after a removal order has become final, that "nothing in the Court's holding says that the government may not remove Diallo or that, if removal were *imminent*, the government could not

41

briefly detain Diallo for purposes of effecting that removal. A detention of that kind might reasonably be thought of as implicit in the concept of "removal" itself. That's not this case ….").

After the six-month period expires, the initial burden is on the alien to show "good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas,* 533 U.S. at 701; *Callender,* 281 F. Supp. 3d at 434 (citing *Pineda v. Shanahan*, 258 F. Supp. 3d 372, 379 (S.D.N.Y. 2017)). It is not sufficient for the alien to show that the government has been unable to obtain a travel document to date. *Callender*, 281 F.Supp.3d at 43. If the alien makes such a showing, the burden then shifts to the Government to provide "evidence sufficient to rebut that showing." *Id.* The "alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*; *Callender,* 281 F. Supp. 3d at 433-35 (S.D.NY. 2017) (citing *Clark v. Martinez*, 543 U.S. 371, 378 (2005)). Thus, in sum, the Supreme Court concluded, that if the alien fails to meet the burden, or if the government rebuts the alien's showing by establishing "significant likelihood of removal in the reasonably foreseeable future," then continued detention is permissible. *Zadvydas,* 533 U.S. at 701; *Callender*, 281 F.Supp.3d at 434 (citing *Beckford v. Lynch*, 168 F.Supp.3d 533, 539 (W.D.N.Y. 2016) (quoting *Zadvydas*, 533 U.S. at 701)). "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by

42

statute." *Zadvydas,* at 699. Thus, the Supreme Court avoided the "serious constitutional threat" presented by a "literal" interpretation of 8 U.S.C. § 1231(a)(6), which could authorize "indefinite, perhaps permanent, detention" in some circumstances, *id.* at 688, 699.

Here, Henriquez and A.C.S's removal order under 8 U.S.C. § 1182(a)(6)(A)(i) [INA § 212(a)(6)(A)(i)], became administratively final when the BIA dismissed their appeal in December 2023. A73 ¶5; A74 ¶¶ 12-13; A112. Following requests in March 2025 and July 2025, to effectuate their removal voluntarily, which Henriquez and A.C.S. ignored, and following ICE's denial of an administrative stay in September 2025, they were asked to bring their passports in November 2025, A75-76 ¶¶ 15,19-21. In December 2025, Henriquez and A.C.S. were detained under 8 U.S.C. § 1231(a)(6) for *under two days* – including transit from New York to Louisiana – for scheduled boarding to a flight to Honduras, stopped only by the December 21 Order staying removal. A3(#5); A48; A76-78 ¶¶ 23-32. These two days are well within the presumptively reasonable six-month period under *Zadvydas*.

In any event, under these circumstances, it is untrue "there is no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas,* 533 U.S. at 701. ICE detained Appellants on December 20, 2025, and would have already been able to remove them on December 22, 2025, but for the December 21, 2025 Order staying removal. A77 ¶¶ 27-29. And, while Appellants are not currently detained,

43

ICE has the ability to remove them promptly upon re-detention as it has their travel documents and it has weekly charter flights to Honduras. A78 ¶¶ 31-32.

Appellants do not squarely challenge any of this on appeal, but argue that the pendency of Henriquez's T-visa application bars removal. Pl. Br. 28-29 That is incorrect. *See* 8 C.F.R. § 214.211(b)(3)(ii) ("The filing of an Application for Derivative T Nonimmigrant Status has no effect on ICE's authority or discretion to execute a final order, although the applicant may file a request for an administrative stay of removal pursuant to 8 C.F.R. 241.6(a)."); *see also Tenelema v. Freden,* No. 25-cv-902, 2025 WL 3514099, at *5 (W.D.N.Y. Dec. 8, 2025) (rejecting argument that T-visa application pendency precluded removal, because "Congress did not bar enforcement of a removal order upon the filing of a T visa application.").[18]

Indeed, even had the T visa application reached the stage of a bona fide determination, which by regulation automatically triggers a stay of removal, Henriquez's detention under Section 1231(a)(6) would still be proper. *See Tenemea v. Noemi*, No. 25-cv-9066, 2026 WL 948309, at *3-4 (S.D.N.Y. Apr. 8, 2026) (denying habeas petition of alien detained under § 1231(a)(6), whose final order of removal was not being executed because his T visa application had proceeded to

---

[18] Notably, the T visa adjudication is not expected soon; based on current processing times, there are approximately 17,000 applications ahead of hers. *See Henriquez II,* ECF 6-4 (Declaration of Mathew J. Warren, dated May 20, 2026) (filed under seal) ¶¶ 4-9, 13, 17.

bona fide determination stage, and his detention was primarily due to the automatic stay at 8 C.F.R. § 214.205(g)(1)-(2), such that his detention was not "due to the government's inability to deport," but instead was "due to Petitioner's own actions," and "'a noncitizen's use of the American judicial process, to the extent it delays removal, does not warrant release under *Zadvydas*'") (citations omitted); *Callender*, 281 F. Supp. 3d at 437 ("[A]n alien cannot, through unilateral action, create the very circumstance that he relies on for relief under *Zadvydas*."); *Garcia v. Dep't of Homeland Sec.*, 422 F. App'x 7, 8 (2d Cir. 2011) (noting that when removal has been stayed at the petitioner's own request and not due to the government's inability to deport him, it is the type of "self-inflicted wound" that "cannot establish grounds for a *Zadvydas* claim").

Indeed, as set forth above, ICE repeatedly invited Appellants to choose their means and timing of departure – to make their own arrangements, at their own convenience – but they chose not to depart, and now are challenging ICE's December 2025 attempt to effectuate the removal order by detaining them in order to put them on a plane. To the extent they attempt to separate their detention – narrowly effectuated to accomplish removal – from the removal order, their repeated declination to depart voluntarily, to wit, without such detention, demonstrates the bankruptcy of that attempted distinction.

Equally without merit is Appellants' argument that since USCIS has not yet

45

adjudicated the T visa application, *Sec. & Exch. Comm'n v. Chenery Corp.,* 318 U.S. 80 (1943), somehow stands for the proposition that removal should be stayed. Pl. Br. 25-26. However, *Chenery* stands for the rule that "judges generally must assess the lawfulness of an agency's action in light of the explanations the agency offered for it rather than any *ex post* rationales a court can devise." *Kakar v. United States Citizenship & Immigr. Servs.*, 29 F.4th 129, 132 (2d Cir. 2022). *Chenery* has no bearing where, as here, the relevant agency has not yet made a decision, and this Court is not evaluating USCIS's T visa application adjudication; Appellants acknowledge there has been none.

In sum, the evidence establishes that Appellants' removal would not only have been "reasonably foreseeable" by a "substantial likelihood" when the habeas was filed, it would already have taken place. While ICE has not yet again scheduled Appellants for an ICE family unit charter flight, it has attempted, while this appeal is ongoing, to encourage voluntary departure arrangements. Thus, ICE's detention of Appellants at a hotel in December 2025 was proper, and their redetention strictly for removal would likewise be proper.

## CONCLUSION

This Court should affirm the judgment of the district court.

Dated:    Brooklyn, New York
           August 6, 2026

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York

VARUNI NELSON
LAYALIZA SOLOVEICHIK
Assistant U.S. Attorneys
   (Of Counsel).

47

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

---

SAUCEDA HENRIQUEZ v. MULLIN

Docket No. 26-189

---

## **CERTIFICATE OF COMPLIANCE PURSUANT TO FED. R. APP. P. 32(g)**

I, Layaliza Soloveichik, certify that the Brief for the Respondents-Appellees,

dated August 6, 2026, complies with Fed. R. App. P. 32(a)(7)(B)(i) and 32(e), in that

it contains **11, 745** words.

Dated:   Brooklyn, New York
         August 6, 2026

LAYALIZA SOLOVEICHIK
Assistant United States Attorney

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

SAUCEDA HENRIQUEZ V. MULLIN

Docket No. 26-189

## DECLARATION OF SUBMISSION OF PAPER COPIES

I, _____, hereby declare that, by August 7, 2026, the

BRIEF FOR THE RESPONDENTS-APPELLEES, which were electronically filed

and served via ACMS, also were submitted by hand delivery (6 copies) to the Court

of Appeals for the Second Circuit.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that

the foregoing is true and correct.

Dated:    August 7, 2026

_____

Kay Printing